Frank Carl WEICK, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Jeffery Melvin MESSICK, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Jerry Lee CONNELLY, Gary Alan Connelly, Defendants Below, Appellants,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted Dec. 14, 1979.

Decided July 9, 1980.

Karl Haller, Asst. Public Defender, Georgetown, for defendants below, appellants Frank Carl Weick and Jeffery Melvin Messick.

Richard E. Fairbanks, Jr., Asst. Public Defender, Wilmington, for defendants below, appellants Jerry Lee Connelly and Gary Alan Connelly.

Merritt Burke, III, Deputy Atty. Gen., Georgetown, for plaintiff below, appellee.

Before HERRMANN, C. J., QUILLEN and HORSEY, JJ.

HERRMANN, Chief Justice:

On appeal, the defendants petition this court to reverse their convictions for Murder in the Second Degree under 11 *Del.C.* § 635(2);[1] and Conspiracy in the Second Degree under 11 *Del.C.* § 512(1).[2]

## I.

In 1978, in a non–jury trial, the defendants were found guilty of Murder in the Second Degree pursuant to § 635(2) and Conspiracy in the Second Degree pursuant to § 512(1).[3] Each defendant was sentenced to life imprisonment on the Murder conviction, and three years probation on the Conspiracy conviction, to run consecutively with the life sentence.

The facts giving rise to the indictments were stipulated for the purposes of trial as follows:

In November, 1977, the defendants agreed with each other and with a fifth person, Eugene Edgar Weick, to seize by force a quantity of marijuana held illegally by Robert and Kathy Fitzgerald. To this end, the defendants Frank Weick, Eugene Weick and Messick armed themselves with loaded sawed–off shotguns. Then they and

\* \* \*."

---

1. 11 *Del.C.* § 635(2) states:

"§ 635. Murder in the second degree; class A felony.

"A person is guilty of murder in the second degree when:

"(2) In the course of and in furtherance of the commission or attempted commission of any felony not specifically enumerated in § 636 of this title or immediate flight therefrom, he, with criminal negligence, causes the death of another person."

2. 11 *Del.C.* § 512(1) provides:

"§ 512. Conspiracy in the second degree; class E felony.

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

'(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony;

3. Defendants had also been indicted on the charges of Attempted Robbery in the First Degree, 11 *Del.C.* § 531, Possession of a Deadly Weapon during the Commission of a Felony, 11 *Del.C.* § 1447, and Possession of a Destructive Weapon, 11 *Del.C.* § 1444. The State, however, subsequently notified the Court, counsel, and others concerned, that it would not prosecute the defendants as to these charges. The record does not disclose the grounds for this action. Under the circumstances and the conclusions we reach on this appeal in which the merit of the position of the defendants seems obvious, it appears to have been questionable prosecutorial judgment to take this position as to the other charges before the instant convictions and sentences were finally affirmed.

the defendants Jerry and Gary Connelly proceeded to the Fitzgerald residence.

Messick, his shotgun hidden under his coat, was admitted to the house by Robert Fitzgerald. Once inside, Messick produced the shotgun and forced Fitzgerald into a rear room of the house. At that point, Frank Weick trained his shotgun on Fitzgerald through a window in that room.

Simultaneously, Kathy Fitzgerald came out of a bedroom and observed what was occurring in the rear of the house. She returned to the bedroom and obtained a 30–30 caliber rifle. On re–exiting from the bedroom she observed Eugene Weick breaking through the kitchen door. She fired the rifle at Eugene and the bullet struck him in the face. Messick and Frank Weick retreated from the house, taking Eugene with them, and met the Connellys, who had been awaiting them in the getaway car. They placed their injured cohort in the car and fled the scene, failing to consummate the intended drug theft. Eugene subsequently died of the bullet wound he received at the hands of Mrs. Fitzgerald. The criminal charges brought against the defendants were based upon that homicide.

The defendants contend: (1) that § 635(2) was applied to them improperly in that it was used as the basis for convictions and sentences for the killing of a co–felon by the intended victim of the felony; (2) that the information filed against the defendants on the charge of Conspiracy in the Second Degree is fatally defective because it failed to allege an overt act; (3) that because the indictment on the Conspiracy charge was defective, the defendants could

not be convicted under § 635(2), since no felony had been proved; (4) that the defendants cannot be convicted as accomplices to Murder in the Second Degree under 11 *Del.C.* § 271[4] because the intent requirements of § 271 and § 635(2) are mutually inconsistent; (5) the retroactive application of a new construction of § 635(2) to include liability for the killing of a co-felon by the intended victim denied the defendants their right to due process of law under the Fourteenth Amendment; and (6) the imposition of separate sentences for Murder in the Second Degree and Conspiracy in the Second Degree constitutes multiple punishments for the same offense under the Double Jeopardy Clause of the Fifth Amendment. Because of the conclusions we reach concerning the first two of these contentions, we need not consider any of the subsequent grounds.

II.

Under § 635(2), the Statute upon which the Murder convictions were based, a person is guilty of Murder in the Second Degree when:

"[i]n the course of and in furtherance of the commission or attempted commission of any felony not specifically enumerated in § 636 of this title or immediate flight therefrom, he, with criminal negligence, causes the death of another person."

The defendants contend that this section was improperly applied to them because, manifestly, § 635(2) was not intended to punish one who commits a felony for a homicide that occurs during the perpetra-

---

4. 11 *Del.C.* § 271 provides:

"§ 271. Liability for the conduct of another— Generally.

"A person is guilty of an offense committed by another person when:

"(1) Acting with the state of mind that is sufficient for commission of the offense, he causes an innocent or irresponsible person to engage in conduct constituting the offense; or

"(2) Intending to promote or facilitate the commission of the offense he:

"a. Solicits, requests, commands, importunes or otherwise attempts to cause the other person to commit it; or

"b. Aids, counsels or agrees or attempts to aid the other person in planning or committing it; or

"c. Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so; or

"(3) His conduct is expressly declared by this Criminal Code or another statute to establish his complicity.

"Nothing in this section shall apply to any law–enforcement officer or his agent while acting in the lawful performance of his duty."

tion of that felony but is not committed by him, his agent, or some one under his control. We agree.

Section 635(2) is the statutory substitute for the common–law felony–murder rule.[5] *Delaware Criminal Code Commentary* 192 (1973). The felony–murder rule originated at common law at a time when all felonies were punishable by death. Therefore, it was immaterial whether the felon was convicted for the underlying felony or for the killing that accompanied the commission of the felony. *Jenkins v. State*, Del.Supr., 230 A.2d 262 (1967). The purpose of the rule was to clothe the actions of the accused and his co–felons, if any, with an implied–in–law malice, thus enabling the courts to find the felon guilty of common–law murder when a killing was committed by one of the felons in the perpetration of the felony. *Jenkins v. State, supra* at 268; *Commonwealth v. Redline*, Pa.Supr., 391 Pa. 486, 137 A.2d 472 (1958); *Wharton's Criminal Law* § 145 (14th ed. 1978).

As this Court noted in *Jenkins*, however, "[w]ith the general trend toward mitigation in the severity of punishment for many felonies, and with the addition of many statutory felonies of a character less dangerous than was typical of most common law felonies, the irrationality and unfairness of an unlimited felony–murder rule become increasingly apparent." 230 A.2d at 268. Consequently, limitations were placed on the scope of the rule. One such restriction was the requirement of a causal connection between the felony and the murder. *Jenkins v. State, supra.* Another restraint placed on the rule by some courts was the requirement that the killing be performed by the felon, his accomplices, or one associated with the felon in his unlawful enterprise. E. g. *Commonwealth v. Campbell*, Mass.Sup.Jud.Ct., 89 Mass (7 Allen) 541 (1863).

In the development of the felony–murder rule through the common law and by statute, the latter limitation has become the majority rule. *State v. Canola*, N.J.Supr., 73 N.J. 206, 374 A.2d 20 (1977). See *People v. Washington*, Cal.Supr., 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130 (1965); *Alvarez v. District Ct. In and For City and County of Denver*, Colo.Supr., 186 Colo. 37, 525 P.2d 1131 (1974); *Commonwealth v. Moore*, Ky. Ct.App., 121 Ky. 97, 88 S.W. 1085 (1905); *State v. Garner*, La.Supr., 238 La. 563, 115 So.2d 855 (1959); *Commonwealth v. Balliro*, Mass.Supr., 349 Mass. 505, 209 N.E.2d 308 (1965); *State v. Majors*, Mo.Supr., 237 S.W. 486 (1922); *Sheriff, Clark County v. Hicks*, Nev.Supr., 89 Nev. 78, 506 P.2d 766 (1973); *People v. Wood*, N.Y.Ct.App., 8 N.Y.2d 48, 201 N.Y.S.2d 328, 167 N.E.2d 736 (1960); *State v. Oxendine*, N.C.Supr., 187 N.C. 658, 122 S.E. 568 (1924); *Commonwealth ex rel. Smith v. Myers*, Pa.Supr., 438 Pa. 218, 261 A.2d 550 (1970). But see *Hornbeck v. State*, Fla.Supr., 77 So.2d 876 (1955); *Jackson v. State*, Md.Ct.App., 408 A.2d 711 (1979); *Johnson v. State*, Okl.Ct.Cr.App., 386 P.2d 336 (1963); *Miers v. State*, Tex.Ct. App., 157 Tex.Cr.R. 572, 251 S.W.2d 404 (1952). The parameters of this rule are probably best defined by *Commonwealth v. Redline*, Pa.Supr., 391 Pa. 486, 137 A.2d 472, 476 (1958) in which it was stated:

> "In adjudging a felony–murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing*. The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony murder doctrine. It is necessary . . to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony . . . and not merely coincidence."

■ We think that this rule clearly applies to § 635(2). That section requires that the homicide be committed "in the course of and in furtherance" of the commission or attempted commission of any felony not enumerated in § 636. Certainly the killing

---

**5.** A provision encompassing part of the felony - murder doctrine can also be found at 11 *Del.C.* § 636(a)(6). This provision, however, applies only to the felonies of Rape, Kidnapping, Arson in the First Degree and Robbery in the First Degree.

of a co–felon by the victim or a police officer, or the accidental killing of an innocent bystander by the victim or a police officer, can hardly be considered to be "in furtherance" of the commission or attempted commission of a felony. Indeed, the homicide in the instant case was an attempt to prevent the felony. As was stated by Chief Justice Traynor in *People v. Washington*:

"Section 189 requires that the felon or his accomplice commit the killing, for if he does not, the killing is not committed to perpetrate the felony. Indeed, in the present case the killing was committed to thwart a felony. To include such killings within section 189 would expand the meaning of the words 'murder . . . which is committed in the perpetration . . . [of] robbery . . .' beyond common understanding." [44 Cal.Rptr. at 449, 402 P.2d at 133].

■ The State places great reliance upon *Jenkins* particularly upon its definition of the felony–murder rule. *Jenkins*, however, preceded the enactment of § 635(2) and was concerned with the general status of the common–law felony–murder rule in Delaware without the benefit of statute. With the enactment of § 635(2) by the General Assembly, the development of the common–law felony–murder rule serves at best, only as a guide for construing the statutory meaning and legislative intent behind § 635(2). Thus, the definition as announced in *Jenkins* is only viable to the extent it is not inconsistent with § 635(2). With the enactment of the "in furtherance" language in § 635(2), any inference [6] in *Jenkins*, that any and all homicides are to be included in the felony–murder rule, must be disregarded.

Moreover, the cases relied on by the Trial Judge to support the convictions of the defendants under § 635(2), *Commonwealth v. Thomas*, Pa.Supr., 382 Pa. 639, 117 A.2d 204 (1955) and *Commonwealth v. Moyer*, Pa.Supr., 357 Pa. 181, 53 A.2d 736 (1947),

have since been overruled by the Supreme Court of Pennsylvania as "[a]berrations in the annals of Anglo–American adjudicature", *Commonwealth v. Redline*, Pa.Supr., 391 Pa. 486, 137 A.2d 472 (1958); *Commonwealth ex rel. Smith v. Myers*, Pa.Supr., 438 Pa. 218, 261 A.2d 550 (1970). We thus find them unpersuasive.

■ Consequently, we hold that defendants were improperly convicted and sentenced for Murder in the Second Degree under § 635(2) for the death of their cohort caused by the victim of the felony.

### III.

The defendants also contend that their convictions for Conspiracy in the Second Degree pursuant to § 512(1) were invalid since the information failed to allege the requisite overt act. The information charged the defendants as follows:

"JERRY LEE CONNELLY . . ., JEFFERY MELVIN MESSICK . ., FRANK CARL WEICK . . . and GARY ALAN CONNELLY . . . on the 14th day of November, 1977, in the County of Sussex, State of Delaware, did commit the act of Conspiracy in the Second Degree, to–wit: did, intending to promote and facilitate the commission of Robbery in the First Degree, did agree, each with the other, that they engage in conduct constituting the attempt to commit the above referenced felony, in violation of Title 11, Section 512(1) of the Delaware Code of 1975, as amended."

The dispute here arises over differing interpretations of 11 *Del.C.* § 512, which appear in the Delaware Code as follows:

"§ 512. Conspiracy in the second degree; class E felony.

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

"(1) Agrees with another person or persons that they or 1 or more of them

---

6. *Jenkins* did not deal with the situation presented here. In *Jenkins*, the homicide was

committed by one of the felons.

will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or

"(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony, *and* he or another person with whom he conspired *commits an overt act* in pursuance of the conspiracy.

"Conspiracy in the second degree is a class E felony."

(Emphasis supplied.)

There is ambiguity; accordingly, statutory construction is required. The State argues that the overt act requirement applies only to § 512(2) and that under § 512(1) proof of the unlawful agreement, without more, is sufficient to obtain a conviction. The defendants argue that the overt act requirement is applicable to both § 512(1) and (2), and that the failure to allege it was a fatal defect in the information. We agree.

Preliminarily, we are faced with the question of whether § 512 as it appears in the Delaware Code is identical to the statutory provision as it was passed by the House and Senate of the General Assembly. We find that it is not. The original provision, as enacted into law on July 6, 1972, provides:

"§ 512. Conspiracy in the second degree

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

"(1) Agrees with another person or persons that they or one or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or

"(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and he or another person with whom he conspired *commits an overt act* in pursuance of the conspiracy.

"Conspiracy in the second degree is a class E felony."

58 Del.Laws c. 497, § 512 (emphasis added); *Delaware Criminal Code Commentary* § 512 (1973). While the difference is only slight, it looms large when considering the issue presented here.

■■ We think, given the language of the provisions as passed by the General Assembly, that it was clearly the legislative intent that, in order to obtain any conviction under § 512, the State must allege in the indictment or information, and prove at trial, that an overt act in furtherance of the conspiracy had been committed. The use of the disjunctive "or" between §§ 512(1) and (2) and the conjunctive "and" following § 512(2), we think, mandate the result we have reached here.

Our conclusion is further buttressed by the Commentary of the Governor's Committee on the Delaware Criminal Code,[7] a group of distinguished judges and attorneys who were instrumental in drafting the Delaware Criminal Code. They stated:

"An important change in the former law is the requirement that an overt act be committed in pursuance of the conspiracy. The overt act requirement is intended to apply to both subsections. Such a requirement is the best possible proof of a settled intention to promote or facili-

---

7. Indeed, the Governor's Committee printed the statutory provision in a third, and more graphic way. It states:

"§ 512. Conspiracy in the second degree.

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

"(1) Agrees with another person or persons that they or one or more of them will engage in conduct constituting the *felony or an attempt or solicitation to commit the felony;* or

"(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; *and* he or another person with whom he conspired *commits an overt act* in pursuance of the conspiracy.

"Conspiracy in the second degree is a class E felony."

(Emphasis supplied.)

tate commission of the crime. It need not be an act which would amount to a 'substantial step' as defined in § 532, but may be any act in pursuance of or tending toward the accomplishment of the conspiratorial purpose. It is sufficient that any of the conspirators has committed an overt act."

*Delaware Criminal Code Commentary* § 511, p. 143 (1973).

We realize that the conclusion we have reached regarding the construction of § 512 may appear contrary to the Delaware Code Enactment Statute, 60 Del.Laws c. 56, § 1 (1975) which provides:

"All laws of the State of Delaware enacted by the General Assembly appearing in the Delaware Code Annotated, Revised 1974, attached hereto and by this reference incorporated herein, are hereby adopted and enacted as the general and permanent law of the State of Delaware."

See also *Roy v. Williams*, Del.Supr., 382 A.2d 1351 (1978) and *Monacelli v. Grimes*, Del.Supr., 99 A.2d 255 (1953), declaring the Code to have the force of "positive law". We do not believe, however, that the Legislature intended to enact misprinted material in the Code leading to results contrary to the manifest legislative intent. 1 *Del.C.* § 301.[8] See 2A *Sutherland on Statutory Construction* § 47.15 (4th ed. 1973). See also *Erie R. Co. v. United States*, 6 Cir., 240 F. 28 (1917); *State v. Pilot Life Insurance Company*, S.C.Supr., 257 S.C. 383, 186 S.E.2d 262 (1972).

It follows that the Information charging Conspiracy in the instant case was fatally defective in that it failed to comply with the overt act requirement of § 512. Accordingly, the convictions of the defendants for Conspiracy in the Second Degree must also be reversed.

---

8.  1 *Del.C.* § 301 provides:
    "§ 301. Rules of construction and definitions.
    "The rules of construction and the definitions set forth in this chapter shall be observed in the construction of this Code and all other statutes,

The case is remanded to the Superior Court for further proceedings in accordance herewith.

\*    \*    \*    \*    \*    \*

Reversed and remanded.

unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the Code or to the context of the same statute."