TRACY D. CRISCO, Defendant Below-Appellant,
v.
STATE OF DELAWARE Plaintiff Below-Appellee.
No. 331, 2007.
Supreme Court of Delaware
Submitted: February 19, 2008.
Decided: March 24, 2008.
Before STEELE, Chief Justice, BERGER, and RIDGELY, Justices.

ORDER
HENRY DUPONT RIDGELY, Justice.
This 24th day of March 2008, it appears to the Court that:
(1) A Superior Court jury convicted appellant-defendant Tracy D. Crisco of Theft by False Pretense and Receiving Stolen Property. On appeal, Crisco argues that the evidence at trial was insufficient to support his convictions. We find no merit to his argument and affirm.
(2) Crisco owned his own motorcycle shop, Motorcycle Parking Only, located in Smyrna, Delaware. As part of his business, Crisco would act as a "middleman" and sell motorcycles for his customers. One of these customers, John Pichette, bought a red and white 2001 Honda CBR 600 F4i from another one of Crisco's customers, Anthony Rowlands, with Crisco serving as the middleman for the transaction in August 2002. Some time later, Pichette's bike was damaged, and he took it to Crisco to be repaired. At the shop, Crisco and Pichette discussed the cost of repairs and also whether it was worth trading in his bike for another one. Pichette testified, however, that he "never got the specifics of the trade." Approximately a month later, in February 2003, Crisco's shop was destroyed by a fire. Thirty-three motorcycles, including Pichette's, were destroyed in the fire.
(3) Following the fire, Crisco told Pichette that "he needed a copy of the title for insurance purposes." Pichette met with Crisco and gave him the original title because he had no way of copying it and that it was "useless" to him because "there was no motorcycle." Pichette testified that he did not sign that title. Pichette also testified that he never received any payment for his destroyed motorcycle or reimbursement for the parts that he had ordered when he brought his motorcycle in for repairs before the fire destroyed it. Pichette eventually sued Crisco in Justice of the Peace Court, but lost his case on appeal.
(4) In April 2006, a second man, David Teel, purchased a black and gray 2001 Honda CBR 600 F4i from Crisco. Teel testified that after he bought the bike, Crisco "made a big point" about how he would repurchase the bike from him if Teel ever wanted to resell it.[1] John Pichette's name appeared on the title as the "seller." Teel recalled that Pichette's signature was already on the title when he received it. Pichette testified, however, that the signature on that title was not his and denied signing any motorcycle documents in 2006.
(5) Detective Gerald Windish, Jr. of the Delaware State Police eventually contacted Teel as part of an unrelated investigation and asked Teel to bring his bike to Troop 4 in Georgetown. William H. Groton, II, who works with the auto theft unit, assisted Detective Windish with his investigation. Upon inspection of the bike, Groton discovered that the VIN number on the frame had been altered and did not match up with the VIN number on the engine. Further investigation revealed that the VIN number on the engine corresponded to a VIN number of a bike owned by Richard Borrelli, which had been reported stolen in 2003. The altered VIN number on the frame corresponded with the same bike that Pichette had bought from Rowlands, which had been destroyed in the 2003 fire.
(6) Crisco was arrested in connection with the stolen motorcycles investigation. Although indicted on sixty-two counts, the State nolle prossed all except five charges: Unlawful Possession of Assigned Certificates of Title or VIN (21 Del. C. § 6710), Forgery Second Degree (11 Del. C. § 861), Theft by False Pretense (11 Del. C. § 843), Receiving Stolen Property (11 Del. C. § 851), and Altered or Changed Serial Number (21 Del. C. § 2310). At his trial, Crisco testified that Pichette had brought him the second bike (the black and silver 600 F4i) to sell as a middleman, which he eventually sold to Teel.[2] He also testified that Pichette had given him the actual title to that bike when Pichette gave him the bike to sell. The jury convicted Crisco of Theft by False Pretense and Receiving Stolen Property, but acquitted him on the remaining charges. This appeal followed.
(7) On appeal, Crisco argues that there was insufficient evidence to prove that he had knowledge that the black and silver bike was stolen and that the Superior Court erred in denying his motion for judgment of acquittal or, alternatively, for a new trial. In reviewing a challenge to the sufficiency of the evidence to support a conviction, we review the evidence de novo to determine "whether a rational trier of fact, considering the evidence most favorable to the prosecution, could find the essential elements of the offense beyond a reasonable doubt."[3]
(8) Theft by false pretense is defined in 11 Del. C. § 843: "A person commits theft when, with the intent prescribed in § 841 of this title, the person exercises control over property of another person which the person knows to have been lost or mislaid, or to have been delivered under a mistake as to the identity of the recipient or the nature or value of the property, without taking reasonable measures to return the property to its owner."[4] In denying Crisco's motion for judgment of acquittal, the Superior Court noted that the State was required to prove three elements beyond a reasonable doubt in order to convict on this charge: that Crisco obtained Teel's property, that Crisco intentionally created a false impression concerning the transaction whereby he obtained Teel's property, and that Crisco intended to appropriate Teel's property for his own personal use. Crisco sold a motorcycle to Teel with a facially valid title in exchange for Teel's money. His representations regarding the bike led Teel to believe that he was buying a legal motorcycle. Pichette, however, testified that he never signed that title and that the signature was not his.
(9) Crisco argues that his testimony that Pichette gave him the black and silver bike to sell was not rebutted by the State, and therefore the only logical inference that can be drawn from his testimony is that he did not know that the bike was stolen. This argument, however, overlooks Pichette's testimony and the inferences drawn therefrom, which must be considered in the light most favorable to the State.[5] Pichette testified that he gave the unsigned title to Crisco for insurance purposes and denied that he sold a bike to Teel in 2006 because his bike "was burned up in the motorcycle fire." Using Pichette's title, and a different motorcycle, Crisco obtained cash from Teel. When viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of theft by false pretense beyond a reasonable doubt.
(10) Similarly, a person is guilty of receiving stolen property under 11 Del. C. § 851 "if the person intentionally receives, retains or disposes of property of another person with intent to deprive the owner of it or to appropriate it, knowing that it has been acquired under circumstances amounting to theft, or believing that it has been so acquired."[6] The Superior Court characterized the elements as requiring intent to receive or retain Borrelli's motorcycle, intent to deprive Borelli of his motorcycle, and knowledge that the motorcycle was obtained by theft. Although Crisco's knowledge has to be inferred circumstantially, the evidence, when viewed in the light most favorable to the State, supports a finding that Crisco knew that the bike was stolen. Crisco used Pichette's title for the destroyed bike to convey title to Borrelli's motorcycle to Teel. When viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of receiving stolen property beyond a reasonable doubt. Accordingly, there was sufficient evidence to support both convictions in this case.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Teel explained that Crisco emphasized this pitch "every time [Crisco] saw him" and on the day of the sale, "he must have said it like ten times."
[2] At the trial on April 12, 2007, Crisco also reiterated his intention to pay Pichette for his losses, although he explained that he did not pay him because of the "problems with a stolen bike he gave me" and that he was "under the advice of an attorney to not pay until everything was worked out."
[3] Carter v. State, 933 A.2d 774, 777 (Del. 2007); Poon v. State, 880 A.2d 236, 238 (Del. 2005); Farmer v. State, 844 A.2d 297, 300 (Del. 2004); Monroe v. State, 652 A.2d 560 (Del. 1995).
[4] 11 Del. C. § 843.
[5] Vouras v. State, 452 A.2d 1165, 1169 (Del. 1982) ("When ruling upon a motion for acquittal, the trial judge must consider the evidence and all legitimately drawn inferences from the point of view most favorable to the state.").
[6] 11 Del. C. § 851.