Lamar COMER, Defendant
Below–Appellant,

v.

STATE of Delaware, Plaintiff
Below–Appellee.

No. 281,2008.

Supreme Court of Delaware.

Submitted: April 29, 2009.
Decided: July 28, 2009.

Jennifer–Kate Aaronson, Esquire (argued) and Andrew W. Gonser, Esquire, Wilmington, DE, for appellant.

Timothy J. Donovan, Jr., Esquire (argued), of the Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS, and RIDGELY, Justices, and MILLMAN, Judge,* constituting the Court en Banc.

RIDGELY, Justice:

This case arises from a gunfight in Wilmington, during which an innocent bystander, Bakeem Mitchell, was shot and killed. Defendant–Appellant Lamar Comer, one of three men charged with Mitchell's death, appeals his Superior Court conviction of murder in the first degree (felony murder) for which he was sentenced to life in prison.[1] Comer raises three arguments on appeal. First, he contends that the trial court erred in instructing the jury on the felony murder charge. Specifically, he claims that the jury instructions allowed him to be convicted of felony murder absent evidence that he, or one of his co-conspirators, fired the fatal shot. Second, he contends that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence at trial to convict him of felony murder. Third, he argues that the trial court erred when it denied his request for a third party culpability jury instruction. We find merit in Comer's first argument, but find that his second argument lacks merit and that his third argument is moot. We reverse his conviction for felony murder in the first degree.

---

* Sitting by designation pursuant to Del. Const. art. IV, § 12.

1. Not at issue in this appeal are Comer's convictions for attempted murder in the first degree, conspiracy in the first degree, reckless endangering in the first degree, and three counts of possession of a firearm during the commission of a felony, for which he was sentenced to a total of thirty-one years in prison followed by probation.

However, the State may elect, in lieu of a new trial, to accept the entry of a judgment of conviction of manslaughter before the Superior Court.

## I.

### Facts and Procedural History

On October 25, 2004, at approximately 7:00 p.m., Bakeem Mitchell was shot and killed by a stray bullet near the corner of Fifth and Madison Streets in Wilmington. Ballistic evidence introduced at trial indicated that Mitchell was an innocent bystander killed by a ricocheted bullet in a shootout involving Lamar Comer, Derrick Williams, Clifford Reeves, and Frank Johnson.

Although the facts and testimony were in dispute, it appears that, at the moment Mitchell was shot, Johnson was driving his vehicle the wrong way on Fifth Street in Wilmington, through its intersection with Madison Street. Some trial evidence indicated that Comer and his co-defendants, Williams and Reeves, began shooting at Johnson near Sixth and Monroe Streets, and that they continued to fire at Johnson from the corner of Fifth and Monroe as he drove his vehicle up Fifth Street. Supporting this scenario, ten 9mm bullet casings were recovered from the intersection of Fifth and Monroe. One witness indicated that Comer, on foot, had pursued Johnson's vehicle up Fifth Street, continuing to fire his weapon. Other trial evidence indicated that Johnson may have either returned fire towards Comer, Williams, and Reeves, or executed a "drive-by" shooting of Mitchell.

Comer, Williams, and Reeves were each indicted on murder in the first degree (felony murder of Mitchell), attempted murder in the first degree (Johnson), conspiracy in the first degree (Johnson), reckless endangering in the first degree, possession of a firearm/ammunition by a person prohibited ("PFPP"), and three counts of possession of a firearm during the commission of a felony ("PFDCF"). At trial, the State argued that Comer and his co-conspirators had recklessly engaged in a gunfight with Johnson. The State's theory was that, although all three co-defendants initially ran after Johnson's car and fired at it, Comer was the only person still firing on Fifth Street, and thus, was the only person capable of striking Mitchell. The State also presented evidence that no gunfire came from Johnson's car. The State suggested that the only person who could have killed Mitchell was Comer.

In contrast, Comer's defense was that the two incidents were separate criminal actions, and that he, Williams, and Reeves happened to be firing at Johnson at the same time Johnson was attempting to murder Mitchell. Comer argued that the testimony was too inconsistent to harmonize, and that the jury could not possibly determine who was shooting at the time Mitchell was killed. Comer also argued that Johnson was the only person firing a gun, and since Johnson's testimony was so inconsistent, Johnson could not be believed.[2] Comer contended that there was no physical evidence tying him to the

---

**2.** Johnson provided a recorded statement to police concerning the events of Mitchell's death. He explained that he was driving on Monroe Street and, as he crossed Sixth Street, he looked in his rearview mirror and observed Comer, Williams, and Reeves draw their weapons and fire at him. Attempting to flee, he then "shot up the one way up Fifth,"

"just keep [sic] shooting past the corner store [crossing Madison]," and made a left on Jefferson Street. Johnson said that he then parked his car on Jefferson near Eighth Street, because the tires were shot out. However, when police located Johnson's vehicle, it had no rearview mirror, no bullet holes, and no flat tires.

crime scene and never admitted that he was even near the crime scene during the shooting.

Over the objection of Comer, the trial court instructed the jury as follows on the element of causation:

> A Defendant causes the death of another person when the Defendant's voluntary act brings about that person's death, which would not have happened but for Defendant's act. *If it is demonstrated beyond a reasonable doubt that a Defendant recklessly fired shots along with others and a person's death was caused by one of those shots, or if it is proved beyond a reasonable doubt that [a] Defendant recklessly participated in an exchange of gunfire that caused a person's death, then the State need not prove that a particular shot, fired by a particular person caused the death.* The State, however, must prove beyond a reasonable doubt that a Defendant recklessly participated actively in the fatal shooting and that the death did not occur independently from Defendant's conduct, before it can be said that he was a legal cause of the death.

The jury subsequently found Comer guilty on all charges except PFPP, but acquitted Reeves and Williams of all charges except the lesser-included offense of conspiracy in the second degree.[3] Comer moved for judgment of acquittal and renewed a motion to dismiss, which the court denied.[4] Comer also filed a motion for reargument, which was also denied.[5] The trial court then sentenced Comer, and this appeal followed.

## II.

## The Agency Theory of Felony Murder Applies in Delaware

Comer contends that the trial court committed legal error when it instructed the jury that it did not need to find that Comer, or one of his co-conspirators, fired the bullet that killed Mitchell in order to be convicted of felony murder. He asserts that Delaware adheres to the agency theory of felony murder, which requires that "the act of killing must be that of defendant and to be defendant's act it must be committed by defendant or one acting in concert with him."[6] Comer argues that the instruction on causation was legally incorrect because it allowed the jury to convict him solely on the basis of his participation in the gun battle and without determining whether he, Williams, or Reeves fired the fatal shot. In response, the State recognizes that the agency theory has been the law in Delaware, but argues that the General Assembly rejected the agency theory, in favor of the proximate cause theory, when it amended the felony murder statute in 2004. Under the proximate cause theory, criminal liability would attach, and a mandatory life sentence would be imposed, when anyone is killed by another person during the course of a felony. We find that the agency theory remains the rule in Delaware, and that the General Assembly did not change this rule when it amended the statute in 2004.

### A. *The felony murder statute.*

Comer was charged with murder in the first degree pursuant to Delaware's felony murder statute, 11 *Del. C.* § 636(a)(2),

---

3. The State later entered a *nolle prosequi* on the PFPP charge.

4. *State v. Comer*, Del.Super., No. 0410023811 (Feb. 2, 2007).

5. *State v. Comer*, Del.Super., No. 0410023811 (Nov. 26, 2007).

6. *State v. Boston*, 1992 WL 91173, at *2 (Del.Super.Ct.1992).

which provides that a person is guilty of murder in the first degree when:

> *While engaged in the commission of,* or attempt to commit, or flight after committing or attempting to commit *any felony, the person recklessly causes the death of another person.*[7]

The General Assembly amended Section 636(a)(2) effective May 19, 2004, four months before the homicide in this case. Pre-amendment, the statute imposed first degree murder liability when, "[i]n the course of and in furtherance of the commission or attempted commission of a felony or immediate flight therefrom, the person recklessly causes the death of another person...."[8] The Synopsis to the bill amending the statute indicates that the legislature intended to be more consistent with the majority approach, noting that removing the phrase "in the course of and in furtherance of" made Section 636(a)(2) utilize language similar to that used in the felony murder statutes in thirty-eight other states.[9] The question thus before us, is whether this amendment supersedes the agency theory of felony murder previously settled by Delaware caselaw. We hold it does not.

### 1. *Pre-amendment interpretations of the statute adopt agency theory.*

Title 11, sections 635(2) and 636(a)(2) of the Delaware Code codify the common law

felony murder rule.[10] Nearly thirty years ago, in *Weick v. State,*[11] we recognized that "[t]he purpose of the [common law] rule was to clothe the actions of the accused and his co-felons, if any, with an implied-in-law malice, thus enabling the courts to find the felon guilty of common-law murder when a killing was committed by one of the felons in the perpetration of the felony." We noted, however, that the common law rule originated at a time when all felonies were punishable by death and "[w]ith the general trend toward mitigation in the severity of punishment for many felonies, and with the addition of many statutory felonies of a character less dangerous than was typical of most common law felonies, the irrationality and unfairness of an unlimited felony-murder rule become increasingly apparent."[12] Therefore, limits were placed on the scope of the rule.[13] One such limitation, which we recognized in *Jenkins v. State*[14] and reaffirmed in *Weick,* "was the requirement of a causal connection between the felony and the murder."[15] As we noted in *Weick,* another limitation adopted by some courts at that time was the "requirement that the killing be performed by the felon, his accomplices, or one associated with the felon in his unlawful enterprise."[16] We further noted that "[t]he parameters of this rule

---

7. 11 *Del. C.* § 636(a)(2) (2007).

8. 11 *Del. C.* § 636(a)(2) (2001), *amended by* 74 Del. Laws. ch. 246, § 2 (2004).

9. 74 Del. Laws. ch. 246, synopsis (2004).

10. *See Weick v. State,* 420 A.2d 159, 162 (Del. 1980); Delaware Criminal Code With Commentary § 636 (1973) ("Subsection (2) ... is a substitute for the felony-murder rule.").

11. 420 A.2d at 162 (citing *Jenkins v. State,* 230 A.2d 262, 268 (1967); *Commonwealth v. Red-*

line, 391 Pa. 486, 137 A.2d 472 (1958); Wharton's Criminal Law § 145 (14th ed. 1978)).

12. *Weick,* 420 A.2d at 162 (quoting *Jenkins,* 230 A.2d at 268).

13. *Id.*

14. 230 A.2d at 269.

15. *Weick,* 420 A.2d at 162.

16. *Id.* (citing *Commonwealth v. Campbell,* 89 Mass. (7 Allen) 541 (1863)) (as an example of

[were] probably best defined" in *Common-wealth v. Redline*,[17] in which the Pennsylvania Supreme Court stated:

> In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is malice and not the act of killing. The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony murder doctrine. It is necessary ... to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony ... and not merely coincidence.

Finding that this limitation represented the majority rule,[18] we explained that it "clearly applies" in Delaware, because the felony murder statute in force at that time required that the homicide be committed "in the course of and in furtherance" of the commission or attempted commission of a felony. If the killing was not committed by the defendant or one acting in concert with him, then logically, the killing could "hardly be considered to be 'in furtherance' of the commission or attempted commission of a felony."[19] Applying this rule in *Weick*, we found that the felony murder statute could not apply when the victim of the felony killed one of the defendants' accomplices.[20] In *dicta*, we also noted that the rule precluded felony murder liability for "the killing of a co-felon by the victim or a police officer, or the accidental killing of an innocent bystander by the victim or a police officer...."[21] Although not denominated as such in that case, this limitation is the agency theory of felony murder.[22]

We examined the felony murder statute more recently in *Williams v. State*.[23] In that case, we explained that *Weick* imposed two separate limitations on felony murder: (1) "that there be a causal connection between the felony and the murder"; and (2) "that the felon, or his accomplices, if any, perform the actual killing."[24] But, we noted that in an intervening decision, *Chao v. State*,[25] we had held that "for felony murder liability to attach, a killing need only accompany the commission of an underlying felony. Thus, if the 'in furtherance' language has any limiting effect, it is solely to require that the killing be done by the felon, him or herself."

After analyzing Section 636(2), we concluded, in *Williams*, that the "in furtherance of" language "not only requires that the murder occur during the course of the felony, but also that the murder occur to

---

a court adopting a requirement that the killing be performed by the felon or his cohort).

**17.** 391 Pa. 486, 137 A.2d 472, 476 (1958)

**18.** *Weick*, 420 A.2d at 162 (citing cases).

**19.** *Weick*, 420 A.2d at 162–63. Although *Weick* was based on felony murder in the second degree, as defined in 11 *Del. C.* § 635(2), that statute was virtually identical to 11 *Del. C.* § 636(a)(2). The difference between the statutes was that Section 636(a)(2) enumerated certain specific underlying felonies necessary for first degree liability, while Section 635(2) applied when the underlying felony was not enumerated in Section 636. The two sections still shared the "in the course of and in furtherance of" language

which was eliminated by the 2004 amendment.

**20.** *Id.* at 163.

**21.** *Id.* at 162–63.

**22.** *See* Paul J. Arougheti, *Imposing Homicide Liability on Gun Battle Participants for the Deaths of Innocent Bystanders*, 27 COLUM. J.L. & SOC. PROBS. 467, 488 & n. 98 (1994) (noting that Delaware adopted the agency theory in *Weick*).

**23.** 818 A.2d 906 (Del.2002).

**24.** *Williams*, 818 A.2d at 911.

**25.** 604 A.2d 1351, 1363 (Del.1992).

facilitate commission of the felony." [26] Thus, in *Williams*, we overruled *Chao*, but retained the agency theory of felony murder we adopted in *Weick*, namely, that "the felony murder language requires not only that the defendant, or his accomplices, if any, commit the killing but also that the murder helps to move the felony forward." [27]

### 2. The agency theory of felony murder was not eliminated by the amendment.

Eighteen months after *Williams* was decided, the General Assembly amended Sections 635(2) and 636(a)(2), removing the phrase "in the course of and in furtherance of." [28] In the Synopsis, the legislature cited our *Williams* decision with disapproval, stating that this Court's interpretation of Section 636(a)(2), as requiring evidence that a killing was "intended to help the [underlying] felony progress," "is inconsistent with the common law rule, and with the definition of felony murder in almost every other state, which does not require evidence of specific intent in a felony murder prosecution." [29] The Synopsis went on to explain that the new statutory language, "while" engaged in felonious conduct meant "only that the killing must be directly associated with the predicate felony as one continuous occurrence"; rather than requiring that the killing affirmatively help facilitate the predicate felony.[30] Thus, the Synopsis indicates that the amendment was targeting this Court's expanded reading of the felony murder statute in *Williams*, which required that the killing facilitate the predicate felony.

Although our adoption of the agency theory in *Weick* was indeed predicated on the now-excised "in furtherance of" language in the pre-amendment statute, the Synopsis demonstrates that the General Assembly did not address either of *Weick's* dual limitations of causation and agency. The language of the current statute supports both the causation and agency limitations. The current statute reads "[w]hile engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, *the person recklessly causes the death of another person*." [31] This language plainly encompasses the requirement that the person (or an accomplice [32]) engaged in the felony cause the death of another. It does not preclude the application of the agency theory of felony murder.

The Synopsis demonstrates that the General Assembly passed the amendment in order to be consistent with the felony murder rule of a majority of states. Although many states in the first half of the twentieth century adopted the rule that any death occurring during the commission of, or escape from, the felony constituted felony murder, the trend thereafter has been decidedly in favor of the agency theory.[33] Thus, of the jurisdictions that

26. *Williams*, 818 A.2d at 913.

27. *Id.*

28. 74 Del. Laws. ch. 246, §§ 1, 2 (2004). The amended statute became effective May 19, 2004, five months prior to Mitchell's murder.

29. *Id.*

30. 74 Del. Laws. ch. 246, synopsis (2004).

31. 11 *Del. C.* § 636(a)(2) (2007).

32. *See* 11 *Del. C.* § 273.

33. *See* Arougheti, supra at 493–94 & n. 130 (citing cases); see also Leonard Birdsong, The Felony Murder Doctrine Revisited: A Proposal for Calibrating Punishment that Reaffirms the Sanctity of Human Life of Co-Felons who are Victims, 33 OHIO N.U.L.REV. 497 504 & n. 60 (2007) ("A majority of jurisdictions follow the agency theory of liability for felony murder.") (citing cases); Matthew A. Pauley, The Pinkerton Doctrine and Mur-

have considered the question, the vast majority maintain that the felony murder rule cannot be used to impose murder liability on a defendant when the lethal act is committed by a person other than the felon or his accomplices.[34] A minority of jurisdictions have adopted the so-called "proximate cause" theory of felony murder urged by the State. Under that theory, a defendant is liable for "any death proximately resulting from the unlawful activity—notwithstanding the fact that the killing was by one resisting the crime." [35]

der, 4 PIERCE L.REV. 1, 2 n. 4 (2005) ("The great majority of American jurisdictions adopt the agency theory of felony murder....");
Brian D. Roark, *State v. Lea:* Attempt Plus Felony–Murder Does Not Equal Attempted Felony Murder, 76 N.C. L.REV. 2360, 2372–73 & n. 91 (1998) (citing cases).

The majority of states considering this issue have found no felony murder liability when a non-felon commits the killing. *People v. Washington*, 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130 (1965) (co-felon killed by robbery victim); *Alvarez v. District Court*, 186 Colo. 37, 525 P.2d 1131, 1132 (1974) (en banc) (victim mistaken for robber and shot by police); *State v. Crane*, 247 Ga. 779, 279 S.E.2d 695, 696 (1981) (accomplice killed by burglarized homeowner); *Commonwealth v. Moore*, 121 Ky. 97, 88 S.W. 1085 (Ct.App. 1905) (victim of attempted robbery accidentally killed bystander); *State v. Garner*, 238 La. 563, 115 So.2d 855, 864 (1959) (bar patron accidentally killed bystander while defending bystander against defendant's assault); *Campbell v. State*, 293 Md. 438, 444 A.2d 1034, 1042 (1982) (no felony murder where co-felon is killed by victim or police); *Commonwealth v. Balliro*, 349 Mass. 505, 209 N.E.2d 308, 314 (1965) (police officer accidentally shot bystander); *People v. Warren*, 44 Mich.App. 567, 205 N.W.2d 599 (1973) (declining to apply agency theory when defendant killed co-felon); *State v. Branson*, 487 N.W.2d 880, 885 (Minn.1992) (bystander killed by shot fired by someone in group adverse to defendant); *State v. Rust*, 197 Neb. 528, 250 N.W.2d 867 (1977) (co-felon shot by police); *Sheriff v. Hicks*, 89 Nev. 78, 506 P.2d 766, 768 (1973) (victim of attempted murder killed co-felon); *State v. O'Kelly*, 135 N.M. 40, 84 P.3d 88, 97–98 (Ct.App.2003) (adopting the agency theory in a case where a bystander accidentally killed the victim of defendant's assault in an attempt to stop the assault.); *State v. Bonner*, 330 N.C. 536, 411 S.E.2d 598 (1992); *State v. Jones*, 859 P.2d 514, 515 (Okla.Crim.App.1993) (express language of felony-murder statute precludes prosecution

when death is caused by one other than defendant or accomplices); *Commonwealth ex rel. Smith v. Myers*, 438 Pa. 218, 261 A.2d 550 (1970) (police officer killed fellow police officer attempting to thwart robbery and returning defendant's fire); *State v. Severs*, 759 S.W.2d 935, 938 (Tenn.Crim.App.1988) (co-perpetrator of crime killed by victim); *State v. Hansen*, 734 P.2d 421, 427 (Utah 1986) (accomplice killed by opponent of felony); *Wooden v. Commonwealth*, 222 Va. 758, 284 S.E.2d 811, 816 (1981) (robbery victim shot accomplice).

**34.** Arougheti, *supra* at 494; *see also State v. Myers*, 760 So.2d 310, 315–16 (La.2000).

**35.** *People v. Lowery*, 178 Ill.2d 462, 227 Ill. Dec. 491, 687 N.E.2d 973, 975–76 (1997) (killing of a bystander by robbery victim); *see also State v. Lucas*, 164 Ariz. 540, 794 P.2d 1353, 1357 (Ct.App.1990) (co-felon shot by intended victim); *Palmer v. State*, 704 N.E.2d 124, 126 (Ind.1999) (co-felon shot by parole officer); *State v. Baker*, 607 S.W.2d 153, 156 (Mo.1980) (en banc) (killing of defendant's accomplice by intended robbery victim); *State v. Martin*, 119 N.J. 2, 573 A.2d 1359, 1373 (1990) (stating in dicta that legislature adopted proximate cause theory); *People v. Hernandez*, 82 N.Y.2d 309, 604 N.Y.S.2d 524, 624 N.E.2d 661, 665 (1993) (stating that defendants could be convicted of murder even though police officer was shot by a fellow officer); *State v. Chambers*, 53 Ohio App.2d 266, 373 N.E.2d 393, 395 (1977) (finding that the legislature intended to adopt proximate cause theory of criminal liability); *Miers v. State*, 157 Tex.Crim. 572, 251 S.W.2d 404, 408 (1952) (involving a victim attempting to thwart felon accidentally killing himself); *State v. Oimen*, 184 Wis.2d 423, 516 N.W.2d 399, 404 (1994) (victim killed defendant's co-felon); *cf. Mikenas v. State*, 367 So.2d 606, 608–09 (Fla.1978) (when police officer killed co-felon, surviving felon guilty of second-degree murder);

The Synopsis does not refer to the minority rule.

The Synopsis to the 2004 amendment indicates that the amendment was intended only to target the *Williams* requirement that the murder occur to facilitate commission of the felony.[36] Significantly, the Synopsis also states that *"other aspects of the present judicial interpretation of Delaware's felony murder rule would remain unaffected by this Act."* [37] Although the agency theory is not explicitly identified as one of the retained "present judicial interpretations," the General Assembly's clearly expressed intent to follow the majority rule of felony murder demonstrates to us that it did not intend to supersede the agency theory with the rule adopted only by a minority of States.

■ Finally, nothing in the Synopsis shows that the General Assembly considered the merits of the agency theory or the proximate cause theory. The concepts are not even mentioned in the Synopsis. Justifications do exist for continuing the agency theory. Those justifications would be subject to consideration by the General Assembly if a proposal to repeal the agency theory had been clearly presented to it. For example, the historical justification for the felony murder rule has been "to deter felons from killing negligently or accidentally by holding them strictly responsible *for killings they commit."* [38] If felons are criminally liable for murder (and a mandatory life sentence) for *any* death occurring during the commission of, or escape from, the felony, felons become strictly liable for killings by others not engaged in the felony.[39] This gives "felons . . . little incentive to refrain from using a gun against an armed victim or a pursuing police officer, since they will be held liable for any deaths that ensue regardless of whether the felons fire any shots themselves." [40] "By limiting liability [for felony murder] to the acts of defendants and their accomplices, the agency theory limits liability to the consequences of acts that are at least putatively within the defendant's control." [41] As a result, unlike the proximate cause theory, the agency theory gives felons incentives to refrain from using a deadly weapon. Although the General Assembly certainly may reject the agency theory if it chooses to do so, we do not discern any legislative intent to supersede the agency theory of felony murder by the 2004 amendment.

## B. *The Superior Court's jury instruction was incorrect.*

■ A party is not entitled to a particular jury instruction; however, a party does enjoy the "unqualified right" to a correct statement of the law.[42] Therefore, we review a jury instruction actually given by the trial court to determine whether it correctly stated the law, and was not so confusing or inaccurate as to undermine either the jury's ability to reach a verdict or our confidence in their ability to do so

---

**36.** 74 Del. Laws. ch. 246, synopsis (2004).

**37.** *Id.*

**38.** *Washington,* 44 Cal.Rptr. 442, 402 P.2d at 133 (emphasis added); *see* Arougheti, *supra* note 22, at 495.

**39.** Arougheti, *supra* note 22, at 489–90, 495–96.

**40.** *Id.* at 496.

**41.** *Id., see also Washington,* 44 Cal.Rptr. 442, 402 P.2d at 133.

**42.** *Banther v. State,* 884 A.2d 487, 492–93 (Del.2005) (quoting *Bordley v. State,* 832 A.2d 1250 (Del.2003)); *see also Carter v. State,* 873 A.2d 1086, 1088 (Del.2005).

fairly under the circumstances.[43]

In this case, the trial judge instructed the jury that:

> If it is demonstrated beyond a reasonable doubt that a Defendant recklessly fired shots along with others and a person's death was caused by one of those shots, or if it is proved beyond a reasonable doubt that [a] Defendant recklessly participated in an exchange of gunfire that caused a person's death, then the State need not prove that a particular shot, fired by a particular person caused the death.

This instruction allowed the jury to convict Comer of felony murder solely on the basis of his participation in the gun battle, and without determining whether he, Williams, or Reeves fired the fatal shot. This is inconsistent with the agency theory of felony murder, which requires that the act of killing must be committed by either the defendant or by one acting in concert with him. Because the instructions did not correctly state the law and did not enable the jury to perform its duty, reversal of Comer's felony murder conviction is required.

■ Nevertheless, this ruling does not necessarily require a new trial. This Court has the authority under Article IV, § 11(1)(b) of the Delaware Constitution to direct modification of a conviction to a lesser-included offense where it is clear that no undue prejudice will result to the defendant.[44] The agency theory does not apply to the crime of manslaughter, which is a lesser-included offense of felony mur-

der and requires only that "[t]he person recklessly causes the death of another person...."[45] Although it is unclear from the evidence presented at trial who fired the fatal bullet, the testimony of the State's witnesses, which was not refuted by evidence presented by the defense, establishes that Comer, Williams, and Reeves were engaged in a gun battle with Johnson, as a result of which Mitchell was killed. Therefore, the State presented evidence sufficient to convict Comer of the lesser-included offense of manslaughter. Accordingly, the State may elect to retry Comer for felony murder *or* accept entry of a judgment of conviction of manslaughter.[46]

### III.

### There was Sufficient Evidence for the Jury to Consider Felony Murder Under the Agency Theory.

■■ Comer contends that the Superior Court erred as a matter of law when it denied his motion for judgment of acquittal. He argues that the State failed to present sufficient evidence to establish beyond a reasonable doubt that the death was caused by him, or one of his co-conspirators. We review the court's denial of a motion for judgment of acquittal *de novo* to determine "whether *any* trier of fact, viewing the evidence in the light most favorable to the State, could find [the defendant] guilty beyond a reasonable doubt of all the elements of the crime."[47]

---

43. *Brown v. State,* 967 A.2d 1250, 1255 (Del. 2009); *Banther,* 884 A.2d at 493; *Cabrera v. State,* 747 A.2d 543, 544–45 (Del.2000).

44. *See Oney v. State,* 397 A.2d 1374, 1376–77 (Del.1979); *Dalton v. State,* 252 A.2d 104, 105–06 (Del.1969); *Porter v. State,* 243 A.2d 699, 703 (Del.1968).

45. 11 *Del. C.* § 632(1).

46. *Waters v. State,* 443 A.2d 500, 506 (Del. 1982); *Oney,* 397 A.2d at 1376–77.

47. *Pennewell v. State,* 2009 WL 2170494, at *1 (Del. July 21, 2009); *Brown v. State,* 967 A.2d 1250, at 1252 (Del.2009); *accord Crisco v. State,* 945 A.2d 1167 (Del.2008) (Table); *Priest v. State,* 879 A.2d 575, 577 (Del.2005); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In order to find Comer guilty of felony murder, the jury was required to find that, while engaged in the commission of, or attempt to commit, or flight after committing or attempting to commit any felony, Comer recklessly caused the death of another person.[48] As explained above, the jury was also required to find that Comer, or one acting in concert with him, performed the actual killing.[49]

The trial court noted in denying Comer's judgment of acquittal, despite the inconsistent testimony in the case, that "the jury could easily have harmonized the evidence and accepted the State's argument that Comer was shooting at Johnson when Mitchell died."[50] Several witnesses testified that Comer and his coconspirators, Williams and Reeves, began shooting at Johnson as he drove by them on Monroe Street and continued to fire up Fifth Street towards Johnson (and Mitchell) from the intersection of Fifth and Monroe. The State also presented four witnesses who testified that Johnson was not firing from his car. Although the defense presented testimony that Comer did not chase Johnson up Fifth Street and that shots were fired from Johnson's car, the jury could have found that the State's witnesses were more credible. When viewed in the light most favorable to the State, this evidence would be sufficient for the jury to find that, in an attempt to shoot Johnson, either Comer or one of his co-conspirators fired a shot that ricocheted and struck Mitchell. Accordingly, the Superior Court properly denied the motion for judgment of acquittal. The evidence is sufficient to create a jury question on whether Comer is guilty of felony murder. Before answering that question, the jury must be instructed consistent with the agency theory of felony murder.

## IV. Conclusion

We **REVERSE** the judgment of the Superior Court and **REMAND** this matter for a new trial on the felony murder charge. In lieu of a new trial, the State may accept the entry of a judgment of conviction of manslaughter as a lesser-included offense of felony murder.

---

48. 11 *Del. C.* § 636(a)(2) (2007).

49. *See Williams,* 818 A.2d at 911; *Weick,* 420 A.2d at 162–63.

50. *State v. Comer,* 2007 WL 313574, at *2 (Del.Super.Feb.2, 2007).