# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE         :         ID No. 1508010489
        :
        v.         :
        :
ABDUL WHITE,         :
        :
        Defendant.         :

Submitted: June 17, 2022
Decided: August 31, 2022

## ORDER

*Upon Consideration of a Commissioner's Report and Recommended Denial of Defendant's Postconviction Relief Motion –**ADOPTED, in part, and REJECTED, in part.***

On this 31st day of August 2022, having considered Defendant Abdul White's amended motion for postconviction relief, the Commissioner's Report and Recommendation (the "Report"), Mr. White's appeal of that Report, the State's response, and the record, it appears that:

1.       On November 2, 2017, a jury found Mr. White guilty of one count of Felony Murder, 11 *Del. C.* § 636; one count of Home Invasion, 11 *Del. C.* § 826; one count of Possession of a Deadly Weapon During the Commissioner of a Felony, 11 *Del. C.* § 1447; thirty counts of Possession of a Firearm During the Commission of a Felony, 11 *Del. C.* § 1447; one count of Kidnapping in the First Degree, 11 *Del. C.* § 783; two counts of Possession of a Firearm by a Person Prohibited, 11 *Del. C.* § 1448; eight counts of Kidnapping in the Second Degree, 11 *Del. C.* § 783; ten counts of Reckless Endangering in the First Degree, 11 *Del. C.* § 604; nine counts of Aggravated Menacing, 11 *Del. C.* § 602; three counts of Endangering the Welfare of a Child, 11 *Del. C.* § 1102; one count of Conspiracy in the Second Degree, 11

*Del. C.* § 512; and one count of Wearing a Disguise During the Commission of a Felony, 11 *Del. C.* § 1239.

2.    The undersigned presided over a two-week trial that examined Mr. White's participation in a home invasion, attempted robbery, multiple kidnappings, weapons offenses, and the torture and execution-style murder of a wheelchair-bound victim.   Mr. White's primary defense at trial was that he acted under duress at the time of the crimes because another individual had threatened him.

3.    After the jury found him guilty of the offenses listed above, the Court ordered a presentence investigation and sentenced him to life in prison for the felony murder and to greater than one hundred years of incarceration for the other convictions.   Mr. White then filed a direct appeal, and the Delaware Supreme Court affirmed his convictions.[1]

4.    After Mr. White's unsuccessful direct appeal, he filed a *pro se* motion for postconviction relief and moved for appointment of counsel under Superior Court Criminal Rule 61.  The Court granted the latter.   Thereafter, his postconviction counsel filed an amended motion.  In that amended motion, Mr. White alleged that his trial counsel and appellate counsel (collectively referred to as his "Trial Counsel") provided him ineffective assistance because they (1) failed to call a witness to testify at trial to support his affirmative defense of duress, and (2) they failed to move for judgment of acquittal at trial or challenge the sufficiency of the evidence on direct appeal.  He further contended that the two ineffective assistance of counsel claims should be viewed through the lens of a more relaxed State Constitutional standard rather than the *Strickland v. Washington*[2] standard.  Finally, he contended that the cumulative effect of Trial Counsels' deficient actions violated

---

[1] *White v. State*, 205 A.3d 822, 2019 WL 719135, at *4 (Del. Feb. 19, 2019) (TABLE).
[2] 466 U.S. 668 (1984).

his right to due process, thereby justifying a new trial.[3]

5.     The Court referred the matter to a Superior Court commissioner as permitted by 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62.   The Commissioner considered the parties' briefing, the record, and Trial Counsels' affidavits that addressed Mr. White's contentions.   She then filed her Report and recommended that the Court deny Mr. White's motion based upon a procedural bar.[4] She alternatively considered Mr. White's substantive arguments.   When doing so, she declined to grant Mr. White's request to hold an evidentiary hearing.[5]   In applying the first prong of the *Strickland* standard, she recommends that the Court deny the motion because Trial Counsel competently represented Mr. White at each challenged stage.[6]   She also alternatively recommends that the Court find no prejudice under the second *Strickland* prong.[7]

6.     At this point in the process, Mr. White appeals the Commissioner's Report.  He raises five objections in his appeal.   In his first objection, he contends that the Commissioner erred when she refused to consider whether the right to counsel provided by Article I, Section 7 of the Delaware Constitution provides greater protection than the corresponding provision in the Sixth Amendment to the United States Constitution.[8]   Second, he contends that she erroneously found that Trial Counsel acted reasonably when they did not call Ashley Gonzalez as a witness.

---

[3] Am. Mot. for Postconviction Relief at 42.  *See Wright v. State*, 405 A.2d 685, 690 (Del. 1979) (explaining that, in cases where there are multiple errors at trial, a reviewing court must weigh the cumulative impact to determine whether the defendant's right to a fair trial was violated).
[4] Super. Ct. Crim. R. 61(i).
[5] Comm'r Report at 20.
[6] *Id.* at 12.
[7] *Id.*
[8] *Cf.* U.S. Const. amend. VI  ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [defense]."); Del. Const. art. I, § 7 ("In all criminal prosecutions, the accused hath a right to be heard by his or her counsel.").

Third, Mr. White alleges that she erred when she rejected his claim that Trial Counsel should have moved for a judgment of acquittal on the felony murder charge. Fourth, Mr. White contends that she erred when recommending that the Court reject his due process claim. Lastly, he objects to the Commissioner's decision to not hold an evidentiary hearing to examine why Trial Counsel did not subpoena Ashley Gonzalez to testify at his trial.

7. At the outset, the Report correctly explains the substantive standard that the Commissioner, and the Court upon review, must apply to this postconviction motion.[9] As a result, the Court recognizes and adopts the substantive standard, and the parameters that the caselaw places upon that standard, as the Commissioner explained in her Report.

8. The scope of review that the Court applies when considering an appeal of the commissioner's report and recommendation is separate from the *Strickland* standard that controls this postconviction analysis. As far as the Court's scope of review, the reviewing judge must conduct a *de novo* review of the record to examine "those portions of the report or specified proposed findings or recommendations to which an objection is made."[10] During the judge's review, he or she may request further evidence from the parties or recommit the matter to the commissioner for further action.[11] At the conclusion of the review, the judge either accepts, rejects, or modifies the report in whole, or in part.[12]

9. Before addressing the Report's substantive recommendations, the

---

[9] *See* Comm'r Report at 11-12 (explaining that a claim for ineffective assistance under *Strickland* requires a showing that counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that but for counsel's error, the outcome of the proceedings would have been different).
[10] Super. Ct. Crim. R. 62(a)(5)(iv).
[11] *Id.*
[12] *Id.*

4

Court must first address an issue that Mr. White did not raise in his appeal. Namely, the Report recommends that the Court find that Superior Court Criminal Rule 61(i)(3) procedurally bars Mr. White's claims. That Rule provides a procedural bar to "any ground for relief that was not asserted in the proceedings leading to the judgment of conviction."[13] As the Delaware Supreme Court recently recognized in the *Green v. State* decision, however, that bar does not apply to ineffective assistance of counsel claims that challenge counsel's actions at trial or during a direct appeal.[14] As a result, the Report erroneously recommends that Mr. White's motion be barred on procedural grounds.

10. Nevertheless, the Report correctly recommends that Mr. White's motion be denied on substantive grounds. The Report, attached as Exhibit A, correctly addresses Mr. White's substantive objections and the Court adopts the Report's reasoning as to each. In the balance of this Order, the Court will provide supplemental explanation that addresses each of Mr. White's objections.

11. In Mr. White's first objection, he contends that he did not waive his argument that the right to counsel provision in Article I, Section 7 of the Delaware Constitution provides greater protection than the corresponding provision in the Sixth Amendment. As the Delaware Supreme Court explained in *Jones v. State*,[15] to present a claim that the Delaware Constitution provides greater protection than the United States Constitution, the defendant must discuss and analyze a non-exclusive list of criteria.[16] They include the following: the Delaware constitutional

---

[13] *Id.* at 61(i)(3).

[14] *See Green v. State*, 238 A.3d 160, 175 (Del. 2020) (recognizing that "the failure to assert an ineffective-assistance-of-counsel claim in the proceedings leading to the judgment of conviction is not a procedural default").

[15] 745 A.2d 856 (Del. 1999).

[16] *Id.* at 864; *see also Wallace v. State*, 956 A.2d 630, 637 (Del. 2008) (finding that the mere recitation of a Delaware State Constitutional provision, without an analysis of the *Jones* factors, waives that argument on appeal).

provision's textual language, its legislative history, preexisting state law, structural differences between it and the Federal Constitution and other states' constitutions, matters of particular state interest or local concern, state traditions, and public attitudes.[17] A party may not rely upon conclusory allegations that the Delaware Constitution provides heightened protection over its federal counterpart. Doing so, without more, waives such an argument.[18]

12. Here, Mr. White failed to sufficiently address the *Jones* criteria in his briefing before the Commissioner. At that point, he waived any such argument. Accordingly, the Commissioner committed no error when rejecting that claim because he made only conclusory allegations that the Delaware provision provides him greater protection than the Sixth Amendment Right to Counsel.[19]

13. Second, Mr. White contends that the Commissioner erred when finding Trial Counsels' decision to not call Ashley Gonzalez to be reasonable. Mr. White contends that she would have supported his duress defense if she had testified. In her Report, the Commissioner relied upon Trial Counsels' affidavits that explained that Trial Counsel contacted Ms. Gonzalez's attorney to see if she would testify.[20] Her attorney responded that she would invoke her Fifth Amendment right against self-incrimination if called.[21]

---

[17] *Jones*, 745 A.2d at 864.
[18] *See Burrell v. State*, 207 A.3d 137, 143 (Del. 2019) (explaining the requirements for a properly presented claim for an alleged violation of the Delaware Constitution and noting that conclusory statements are not enough).
[19] Furthermore, as the State recognized in its response to Mr. White's appeal, the Delaware Supreme Court has recently affirmed a Superior Court holding that Article I, Section 7's right to counsel provision provides *less* protection than does the Sixth Amendment. *State v. Xenidis*, 212 A.3d 292, 301 (Del. Super. Apr. 26, 2019), *aff'd*, 226 A.3d 1147, 2020 WL 1274624 (Del. Mar. 17, 2020). Given the Delaware Supreme Court's affirmance of that decision, Mr. White's state constitutional law claim is also appropriately denied on that basis as well.
[20] Trial Counsel Aff. ⁋ 4; Co-Counsel Aff. ⁋ 4-5.
[21] Trial Counsel Aff. ⁋ 4.

14. Ashley Gonzalez faced criminal exposure in two different cases. First, the State had indicted Ms. Gonzalez, Mr. White, and others, for conspiracy, racketeering, and drug dealing charges based upon a wiretap investigation.[22] It then separately indicted Mr. White for felony murder, home invasion, weapon offenses, kidnapping, and other charges. Mr. White contends that because (1) Ms. Gonzalez faced unrelated charges that resolved approximately five months prior to Mr. White's trial, and (2) the affidavits do not address when Trial Counsel contacted Ms. Gonzalez's counsel regarding her testimony, the Court should assume that the contact occurred before Ms. Gonzalez resolved her case. In addition, he asks the Court to assume that Ms. Gonzalez would have then changed her mind after she resolved her wiretap charges.

15. The Commissioner correctly observed, however, that Ms. Gonzalez retained ongoing and significant criminal exposure in the murder case because of her involvement in those events. Nothing in the resolution of Ms. Gonzalez's wiretap case provided her immunity for the separate home invasion/murder charges. Nor did the wiretap resolution provide her double jeopardy protection from prosecution in the murder case. As a result, a reasonable attorney in Trial Counsels' position would have concluded that her concerns regarding self-incrimination came from her accomplice liability exposure in the murder prosecution.

16. In addition, apart from Fifth Amendment concerns, Trial Counsels' affidavits recited that Ms. Gonzalez's attorney told them that her testimony would not help Mr. White.[23] Trial Counsel also reasonably assumed that Ms. Gonzalez's potential accomplice exposure in the murder case, and her involvement in the series of events that culminated in the murder, made it more likely that she would have

---

[22] *State v. Gonzalez*, ID No. 1509002952 (Del. Super. May 10, 2017) (D.I. 7).
[23] Co-Counsel Aff. ¶ 5.

7

hurt, rather than helped, Mr. White at trial. Given that reality, Mr. White suffered no prejudice based on the decision not to call her as a witness. For these reasons, the Commissioner correctly found that Mr. White did not meet his burden on either *Strickland* prong.

17. Third, Mr. White objects to the Commissioner's finding that Trial Counsel acted reasonably despite not moving for a judgment of acquittal.[24] Here, Mr. White contends that the State did not meet its *prima facie* burden regarding felony murder when it rested after its case-in-chief.[25] The Court also considers his objection as one claiming that Trial Counsel should have renewed the motion at the close of the evidence. The State had alleged home invasion to be the predicate felony to felony murder.[26] In his objection, Mr. White argues that the evidence regarding felony murder was insufficient because the State did not demonstrate that the victim's killing was committed "in furtherance of" a home invasion.

18. In this objection, he first contends that to qualify as a felony murder, the victim's death had to be "directly associated with the [home invasion] as one continuous occurrence."[27] He then asks the Court to apply a truncated frame of reference to what can qualify as a home invasion. Namely, he contends that a home invasion occurs only at the time of entry and then ceases thereafter. In this way, he contends that his home invasion concluded well before the murder.

19. Mr. White advocates too narrow of a reading of the time element in the definition of home invasion. First, as to a felony murder, a person is guilty of the

---

[24] Accompanied in his original argument was his additional position that appellate counsel should have also addressed the issue on direct appeal.

[25] *See Shipley v. State*, 570 A.2d 1159, 1170 (Del. 1990) (explaining that, on a motion for judgment of acquittal, "the question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

[26] Indictment, Count IV, *State v. White*, ID No. 1508010489 (Del. Super. Jan. 4, 2016) (D.I. 4).

[27] Def. Appeal of Comm'r Report at 13 (citing *Comer v. State*, 977 A.2d 334, 340 (Del. 2009).

offense if "[w]hile *engaged in the commission of,* or attempt to commit, *or flight after committing* or attempting to commit *any felony* [here, a home invasion], the person recklessly causes the death of another person."[28]   The question then turns to whether the evidence supported the jury's finding that the home invasion continued through the time of the murder.  A home invasion occurs when:

> [a] person knowingly enters **or remains** unlawfully in an occupied dwelling with intent to commit a crime therein . . . and in effecting entry **or when in** the dwelling or immediate flight therefrom, the person or another participant engages in the commission of, or attempts to commit, and of the following felonies: Robbery in the first or second degree . . . Assault in the first or second degree . .  Murder in the first or second degree [or] Kidnapping in the first or second degree.[29]

20.   Here, the evidence supported a reasonable jury's finding  that several predicate offenses to home invasion took place *from the time Mr. White entered the home through the time he exited the home*.  Mr. White seeks to read the phrase "or remains" out of the definition of the offense and asks the Court to recognize only the phrase "enters."   Mr. White's home invasion continued while he remained in the unlawfully.   It also continued throughout that time because he and his co-conspirators continued to commit a list of felonies that qualified as predicate offenses for the offense of home invasion.  Trial Counsels' decision to not move for a judgment of acquittal was not deficient in *Strickland* terms because there was no basis for such a motion.  Nor could there be prejudice caused by Trial Counsels' failure to make a motion that is unsupported by law.

21.    As a fourth objection to the Report,  Mr. White alleges a cumulative due process violation because he alleges that Trial Counsels' actions were

---

[28] 11 *Del. C.* § 636(a)(2) (emphasis added).  The indictment in this case tracks this statute. Indictment, Count IV, *State v. White*, ID No. 1508010489 (Del. Super. Jan. 4, 2016) (D.I. 4).
[29] *Id.* § 826(a) & (b) (emphasis added).

9

unreasonable in several ways. The Commissioner correctly rejected that argument because Mr. White failed to demonstrate a single incident of deficient performance in Trial Counsels' representation of him at trial or on direct appeal. Where there is no single instance of deficient performance, it follows that there were no cumulative deficiencies that justify a new trial.[30]

22. Fifth, and finally, the Commissioner did not err when she declined to hold an evidentiary hearing. The decision regarding whether to hold an evidentiary hearing in a postconviction case falls within the discretion of the Court.[31] It is well-settled that, if upon the face of a Rule 61 motion, it appears the movant is not entitled to relief, the Court need not conduct one.[32] Here, Trial Counsels' affidavits demonstrate that they reasonably understood that Ms. Gonzalez would not waive her Fifth Amendment privilege because of concerns regarding her exposure in the murder case.[33] Furthermore, Trial Counsel did not act unreasonably when they did not call a witness to testify where that witness's attorney told them her testimony would not help their case.[34] For both of these reasons, Mr. White fails to demonstrate that the Commissioner abused her discretion by not conducting an evidentiary hearing. Nor has Mr. White demonstrated why the record required expansion on the issue. A hearing would not have changed the result.

**WHEREFORE**, after considering Mr. White's objections to the Report attached and incorporated as Exhibit A to this Order, and undertaking a *de novo* review of the record, the Court **Adopts, in part,** and **Rejects, in part**, the Report's recommendations. The Court rejects the Report's recommendations that Mr.

---

[30] *Michaels v. State*, 970 A.2d 223, 232 (Del. 2009).
[31] *Maxion v. State*, 686 A.2d 148, 151 (Del. 1996).
[32] *Hawkins v. State*, 839 A.2d 666, 2003 WL 22957025, at *1 (Del. Dec. 10, 2003).
[33] Trial Counsel Aff. ¶ 4-5 (emphasis added).
[34] Co-Counsel Aff. ¶ 5.

White's claims are procedurally barred. It adopts, however, all other aspects of the Report that set forth the Commissioner's reasons for recommending that the Court deny Mr. White's motion on substantive grounds. Accordingly, for the reasons in the Report and for those explained above, Mr. White's amended motion for postconviction relief must be **DENIED**.

   **IT IS SO ORDERED.**


                                              /s/Jeffrey J Clark
                                              Resident Judge




JJC
oc:  Prothonotary
cc:  The Honorable Andrea M. Freud
     Trial Counsel
     Postconviction Counsel of Record

# Exhibit A

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | )   ID. No. 1508010489 |
| | ) |
| ABDUL T. WHITE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMMISSIONER'S REPORT AND RECOMMENDATION

### Upon Defendant's Motion for Postconviction Relief
### Pursuant to Superior Court Criminal Rule 61

Kathryn J. Garrison, Esq., Deputy Attorney General, Department of Justice, for the State of Delaware.

Christopher S. Koyste, Esq., Law Offices of Christopher S. Koyste, LLC, for Defendant.

FREUD, Commissioner
March 10, 2022

The defendant, Abdul T. White ("White"), was found guilty following a jury trial on November 2, 2017 of one count of Felony Murder, 11 *Del. C.* § 636; one count of Home Invasion, 11 *Del. C.* § 826; one count of Possession of a Deadly Weapon During the Commissioner of a Felony, 11 *Del. C.* § 1447; thirty counts of Possession of a Firearm During the Commission of a Felony, 11 *Del. C.* § 1447; one count of Kidnapping in the First Degree, 11 *Del. C.* § 783; two counts of Possession

of a Firearm by a Person Prohibited, 11 *Del. C.* § 448; eight counts of Kidnapping in the Second Degree, 11 *Del. C.* § 783; ten counts of Reckless Endangering in the First Degree 11 *Del. C.* § 604; nine counts of Aggravated Menacing, 11 *Del. C.* § 602; three counts of Endangering the Welfare of a Child, 11 *Del. C.* § 1102; one count of Conspiracy in the Third Degree, 11 *Del. C.* § 512; and one count of Wearing a Disguise During the Commission of a Felony, 11 *Del. C.* § 1239.

The jury found White not guilty of one count of Intentional Murder, three counts of Possession of a Firearm During the Commission of a Felony, two counts of Possession of a Deadly Weapon During the Commission of a Felony, one count of Robbery in the First Degree, one count of Kidnapping in the First Degree, and one count of Conspiracy in the First Degree. A presentence report was ordered and on April 10, 2018, White was sentenced to a life in prison for the felony murder conviction and over one hundred years incarceration on the remaining charges.

A timely Notice of Appeal to the Delaware Supreme Court was filed. Appellate counsel raised five issues on appeal for the Supreme Court to consider which the Supreme Court classified as follows:

Claim I:  On appeal, White argues that the Superior Court should have required the State to produce its search warrant affidavit for Baines' DNA and the DNA itself because they might have been relevant to the crime scene evidence in the murder case.

Claim II:  White also argues that the Superior Court should have required the state to disclose information relating to threats against White after he testified at trial. White claims he could have used the evidence during trial.

Claim III:  Next, White contends the court erred in not ordering production of any evidence related to the ballistics expert's discipline and resignation from State

14

employment.

Claim IV: White also argues that the trial court should have granted a mistrial after the State produced Baines' statement, instead of granting White four additional days to review the statement and respond.

Claim V: Finally, White argues that the Superior Court erred in admitting his "Duct tape Bandit" tattoo because it was prohibited character evidence, hearsay, and any probative value it had was substantially outweighed by the risk of prejudice.[35]

The Supreme Court affirmed White's conviction on February 19, 2019, and the mandate issued on March 18, 2019.[36]

Next White filed a *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61 on July 23, 2019, along with a motion for appointment of counsel. The Court granted the motion to appoint counsel on August 6, 2019 and referred the matter to the Office of Conflicts Counsel. On January 31, 2020, Christopher S. Koyste, Esquire ("Appointed Counsel") was appointed to represent White. On December 23, 2020, Appointed Counsel filed an Amended Motion for Postconviction Relief and an opening brief in support of the motion. The matter was set for briefing.

## WHITE'S CONTENTIONS

White's Appointed Counsel filed an Amended Motion for Postconviction Relief pursuant to Superior Court Rule 61. In the motion, the following grounds for

---

[35] *White v. State*, 205 A.3d 822 (Table), Del. Supr. No. 210, 2018.
[36] *Id.* at *4.

relief were raised:

Claim I: Trial Counsel were ineffective for failing to call a defense witness on behalf of Mr. White who would have provided testimony to support Mr. White's affirmative defense of duress resulting in prejudice to Mr. White, in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and in violation of Article I, § 7 of the Delaware Constitution.

Claim II: Trial counsel rendered ineffective assistance of counsel by failing to file a motion for judgment of acquittal, as the State's evidence was insufficient to support Mr. White's conviction, in violation of Mr. White's rights under the Sixth and Fourteenth Amendments to the United States constitution and under Article I, § 7 of the Delaware Constitution.

Claim III: Appellate counsel was ineffective for failing to raise on direct appeal that there was insufficient evidence to convict Mr. White, in violation of Mr. White's right under Article I, § 7 of the Delaware Constitution and in violation of the Sixth and Fourteenth Amendments to the United State Constitution.

Claim IV: Mr. White's constitutional due process right to a fair trial was denied due to cumulative error in violation of his rights under the Fourteenth Amendment to the United States Constitution and in violation of Article I, § 7 of the Delaware Constitution.

**FACTS**

Following are the facts set forth by the Delaware Supreme Court in its opinion on White's direct appeal:

16

On August 8, 2015, White and two other masked and armed men broke into John Harmon's home and restrained all eleven occupants. White's wife drove the three men to the house. White and his associates believed Harmon had a large amount of marijuana at the house. White ordered his accomplices to restrain the occupants with duct tape. White then allegedly interrogated and tortured Harmon trying to find the hiding place for the marijuana. Eventually, Harmon was shot, and the three men fled the house without finding any drugs.

The five adult witnesses who testified described the man who shot Harman as substantially larger than the other two and wearing a helmet.[37] The helmet had a light duct-taped to it and was found in Harmon's house with White's fingerprint on it.[38] One witness also identified the shooter as having a tattoo on his face – which White also has.[39]

At trial White testified that he was in the house, but not the person who shot Harmon. White also claimed that he participated in the crime under duress. According to White, Kevin McDonald, Sr. – White's cousin – led a criminal operation which included White. White claimed to fear for his life if he did not aid McDonald because White owed him $20,000.

During the trial White's counsel noted that Khalil Baines, one of the men with White during the robbery, had given a two-and-a-half-hour statement to the police, largely related to the robbery, that was not provided to White. White argued that the statement was *Brady* evidence and also a statement by a co-defendant – both of which should have been disclosed to the defense. The court accepted the prosecutor's statement that nothing in the statement was exculpatory, but ordered it produced as arguably a co-defendant's statement. The court gave White a few days to review the tape before continuing the trial. The Superior Court denied White's request for a mistrial, noting that White had not alleged any substantial prejudice and there was no evidence of prosecutorial bad faith.[40]

Upon resumption of the trial, White requested that the State be ordered to produce the probable cause affidavit attached to a search warrant request for Baines' DNA, and a sample of the DNA itself. The

[37] App. to Answering Br. at B10-19 (Trial Tr.).
[38] *Id*. at B32.
[39] *Id.* at B5.
[40] App. to Opening Br. at A86-87 (Trial Tr.).

trial court refused because the DNA was sought for a separate drug case involving Baines, and the State had not compared Baines' DNA to any DNA found in Harmon's home.

During trial the State sought to introduce evidence of the tattoo on White's stomach reading "Duct Tape Bandit" in a motion in *limine*. White opposed the motion, claiming the tattoo was inadmissible hearsay and the State was improperly using it as prejudicial character evidence. The Superior Court admitted the tattoo because it was a party admission, duct tape was used at the crime scene, and the risk of prejudice did not substantially outweigh its probative value.[41]

The following is an overview of the witness testimony at trial. Renita Harmon, the sister of the victim, testified that she saw two intruders in the house. One was a large light skinned black male who was wearing a helmet with a "camera" on top of it. The second intruder was smaller, thinner, and younger looking. Ms. Harmon testified that only the larger man went into the bedroom where her brother, the victim, was and that she could hear her brother being beaten. She further stated that the smaller intruder never went in the bedroom but was in the living room when she heard two-gun shots and then heard the big guy come out of the bedroom. Ms. Harmon had been duct taped and was lying on the couch in the living room at the time.

Kiana Freeman, the victim's daughter, testified that she was awakened by doors being kicked in and then saw an intruder with a helmet with a "light" on it pointing a gun at her. She saw two other intruders; both were brown skinned and smaller and skinnier than the first intruder with the helmet and gun. One intruder had a green mask and blond hair. She stated that the intruder with the helmet and gun was much bigger, more muscular than the other two. All of the persons in the house were made to lie in the living room. The intruder with the helmet went into

---

[41] *State v. White*, 2017 WL 3084711, at *2 (Del. Super. July 20, 2017).

victim's bedroom and was talking on a walkie talkie. She testified the small guy with the green mask and blonde hair went into the bedroom briefly early on in the event, which lasted in total between twenty and twenty-five minutes. He was not in the room when she heard the big guy pistol whipping her father. All three had guns. At one point smoke detectors went off and she heard the big guy with the walkie talkie speaking to someone else and asked, "what do you want me to do?" She then heard two-gun shots and all the intruders ran from the house. She stated that when the smoke detector when off only the big guy with the helmet was in her father's bedroom.

La'Bria Northan, another relative of the victim, also testified that there were three intruders one large and stocky man and two small skinny men. She said a small man stood by the door during the invasion and that the entire event lasted approximately forty-five minutes and that towards the end the smoke detector went off and she heard two-gun shots after which the intruders all fled the residence.

Sh'Kise Spenser, the victim's son, awoke that morning with a gun pointed at his face and he saw a big light skinned black man with a helmet on and a tattoo on his face.[42] He only saw two of the intruders the large man with the helmet and face tattoo and a smaller skinnier man, but he heard a third intruder. He testified that only the large man went into his father's bedroom and first he heard his father being pistol whipped. At the end of the home invasion, Mr. Spenser heard two shots with a pause between them. He stated he only saw the large man enter the bedroom.

Miraye Northam, also woke up to dogs barking and a large man with a gun. She also saw a small skinny man who stood by the door during the event. She also confirmed that only the large man went into the victim's bedroom.

Detective Dwight Young testified that the defendant's fingerprint was

---

[42] The defendant has a tattoo on his face as described by Sh'kise.

19

found on the helmet that was found in the victim's bedroom.

## DISCUSSION

Under Delaware law, the Court must first determine whether White has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[43] Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[44] White's motion was filed in a timely fashion; thus, the bar of Rule 61(i)(1) does not apply to the motion. As this is White's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

None of White's claims were previously raised at trial or on direct appeal and they should be barred unless he demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[45] The bars to relief are inapplicable to a jurisdictional challenge or "to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of Rule 61.[46] To meet the requirements of Rule 61(d)(2) a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted[47] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United State or Delaware Supreme courts, applies to the defendant's case rendering the

---

[43] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991).

[44] Super. Ct. Crim. R. 61(i)(1).

[45] Super. Ct. Crim. R. 61(i)(3).

[46] Super. Ct. Crim. R. 61(i)(5).

[47] Super. Ct. Crim. R. 61(d)(2)(i).

20

conviction invalid.[48] White's motion pleads neither requirement of Rule 61(d)(2).

Each of White's grounds for relief are premised on allegations of ineffective assistance of counsel. Therefore, White has alleged sufficient cause for not having asserted these grounds for relief at trial and on direct appeal. White's ineffective assistance of counsel claims are not subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including White, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[49] The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[50]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark. Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two-part analysis enunciated in *Strickland v. Washington*[51] and adopted by the Delaware Supreme Court in *Albury v. State*.[52]

The *Strickland* test requires the movant show that counsel's errors were so

---

[48]   Super. Ct. Crim. R. 61(d)(2)(ii).

[49]   *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[50]   *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[51]   466 U.S. 668 (1984).

[52]   551 A.2d 53, 58 (Del. 1988).

grievous that his performance fell below an objective standard of reasonableness.[53] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the proceedings would have been different, that is, actual prejudice.[54] In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[55]

Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[56] However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[57] In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[58] Furthermore, White must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[59]

Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[60] In *Harrington v. Richter*,[61] the United States

---

[53] *Strickland*, 466 U.S. at 687; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

[54] *Id.*

[55] *See* e.g., *Outten v. State*, 720 A.2d 547, 557 (Del. 1998) (citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.)).

[56] *Strickland*, 466 U.S. at 687.

[57] *Id.* at 697.

[58] *State v. Gattis*, 1995 WL 790961 (Del. Super.).

[59] *Strickland,* 466 U.S. at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).

[60] *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

[61] *Harrington v. Richter*, 131 S. Ct. 770 (2011).

Supreme Court explained the high bar that must be surmounted in establishing an ineffective assistance of counsel claim. In *Harrington*, the United States Supreme Court explained that representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial.[62] The challenger's burden on an ineffective assistance of counsel claim is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial.[63]

Counsel's representation must be judged by the most deferential of standards. The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with his client, with opposing counsel, and with the judge. In light of this strong precedent, I have reviewed the file, considered Trial Appellate Counsel's affidavits and the arguments of counsel and I conclude that White has failed to meet the burden imposed by *Strickland*. The Trial and Appellate Counsel deny all of White's allegations. I find Trial and Appellate Counsels' affidavits more compelling than White's allegations. Furthermore, I find no reason for an evidentiary hearing in this case despite White's argument in favor of a hearing. I find that Trial and Appellate Counsel represented White effectively. To the extent, if any, that White's claims are not procedurally barred I will address each claim.

White makes conclusory assertions in his amended Rule 61 motion that his

---

[62] *Id.*, at 791.
[63] *Id.*

23

conviction resulted from violations of Article I, section 7 of the Delaware Constitution. Am. Mot. at 17, 27, 37, 42. A conclusory assertion that a defendant's rights as guaranteed by the Delaware Constitution have been violated is insufficient to sustain such an argument[64]. In *Ortiz v. State*, the Delaware Supreme Court delineated the proper form for raising a State Constitutional contention and held that "conclusory assertions that the Delaware Constitution has been violated will be considered to be waived on appeal.[65] Citing *Jones v. State*,[66] the Supreme Court identified at least a partial list of criteria to utilize in determining whether a United States Constitutional provision has an identical or similar meaning to a similar provision in the Delaware State Constitution.[67] These criteria include: textual language; legislative history; preexisting state law; structural differences; matters of particular state interest or local concern; state traditions; and public attitudes.[68] A proper allegation of a State Constitutional violation should include a discussion and analysis of one of more of these enumerated criteria.[69] To the extent White's amended motion fails to heed this established stricture, his conclusory claims that his State Constitutional rights were violated have been waived and I recommend they be summarily denied.

White's first ground for relief is that his trial counsel were ineffective for failing to call Ashley Gonzalez as a defense witness because she would have presented testimony that would have corroborated White's defense that he was

---

[64] *See Sykes v. State*, 953 A.2d 261, 266 n.5 (Del.2008) ("Sykes's conclusory assertion that his rights under the Delaware Constitution have been violated results in his waiving the State constitutional law aspect of this argument."). *See also Jackson v. State*, 990 A.2d 1281, 1288 (Del. 2009); *Betts v. State*, 983 A.2d 75, 76 n. 3 (Del. 2009); *Jenkins v. State*, 970 A.2d 154, 158 (Del. 2009); *Wallace v. State*, 956 A.2d 630, 637-38 (Del. 2008).
[65] 869 A.2d 285, 290-91, n.4 (Del. 2005).
[66] 745 A.2d 856, 864-65 (Del. 1999).
[67] *Ortiz*, 869 A.2d at 291 n.4.
[68] *Id.*
[69] *Id.*

coerced to participate in the home invasion. Specifically, he asserts she could have testified that Baines admitted shooting Harmon, that she and White received threats before and after the home invasion, that Kevin McDonald caused Harmon to be in a wheelchair, and that on the night of the murder, McDonald was outside the residence "to make sure that everything went the way it was supposed to." White's claim is unsupported by the facts of the case as stated by the State in its response to the amended motion.

According to the State's response, around September 2015, the Delaware State Police wrapped up a wiretap investigation into a drug operation run by Kevin M. McDonald, White's cousin. At trial in this case, White testified that he was a part of that operation, running heroin for McDonald. White claimed that in 2015, he owed McDonald $20,000 for 400 bundles of heroin entrusted to White that were seized by the police. To pay him back, McDonald came up with a plan for White to rob a drug dealer, Harmon. White testified that he did not have any choice but to help McDonald because he was afraid his life was in jeopardy and that McDonald would harm his family members.

White testified at trial that his wife, Ashley Gonzalez, drove him to Harmon's home on the night of the murder, August 15, 2015, stayed outside in the car, then drove them away afterwards. Gonzalez was also involved in McDonald's drug operation and was heard in telephone conversations recorded as part of the wiretap investigation helping to set up the robbery of another drug dealer.

In calls intercepted beginning on August 21, 2015, White and McDonald's son made detailed plans to rob another drug dealer ("the second robbery"). In one of those calls, White tells McDonald that "his girl" is going to go get "jawns" (a code word for ammunition) for him. On August 22, 2015, the police obtained video surveillance of Gonzalez purchasing ammunition for White

On September 8, 2015, a Kent County grand jury indicted Gonzalez, White, McDonald, McDonald's son and several other individuals with Racketeering and related charges stemming from the investigation into McDonald's drug dealing activities. Gonzalez was indicted for Racketeering and Conspiracy Second Degree and White was indicted for Racketeering.[70] At some point thereafter, Gonzalez was arrested.

On May 4, 2017, Gonzalez gave a statement to the police about the Harmon murder. She corroborated White's version of events, that, among other things, she drove White to the house that night, and afterwards she drove White, Kahlil, and another man to Elkton Maryland and then to Philadelphia. During the ride, the men told her what had happened and White said he would "take it on the chin" for the murder. Kahlil responded that he was the one who should take it "cause I killed boy." Gonzalez also told police that she rented the car used that night and that "[she] always rented cars for [White]."

On May 10, 2017, Gonzalez resolved her racketeering case by pleading guilty to Conspiracy Second Degree. A71, 74. Gonzalez had not been charged, and the State had not offered her immunity, for her role in the Harmon murder.[71]

In their affidavits trial counsel stated that, prior to trial, they contacted Gonzalez's attorney about having Gonzalez testify for the defense. Funk Aff. at 2; Gill Aff. at 2. But Gonzalez's attorney advised her not to testify, representing that she would invoke her Fifth Amendment right to remain silent if called unless the State granted her immunity, which it had refused to do. Funk Aff. at 2. Trial counsel were clearly not ineffective for failing to call Gonzalez to testify as a defense witness

---

[70] On November 2, 2015, the State reindicted the racketeering case, but the charges against White and Gonzalez remained the same. *See State's Appendix C, A71*; Ex. D.
[71] State's Response to the Motion p. 11-13.

because she was unavailable.[72] But even assuming counsel could have called Gonzalez, White cannot show he was prejudiced from their failure to have done so.

Gonzalez was clearly an interested witness. Not only was she White's wife, but she was also an accomplice to his crimes – renting cars and buying ammunition for him – and she was aware of his criminal activities. *See* State's Ex. B at 5 (Gonzalez can be heard in the background of White's call with McDonald's son). As noted by the state she helped him to prepare for the second robbery White was planning with McDonald's son *after* Harmon's murder. The limited value of her testimony that another person killed Harmon and that White acted under duress is heavily outweighed by the substantial damaging information likely to be yielded through her cross examination.

As noted by the State, it sought to introduce, under Delaware Rule of Evidence 404(b), wiretap phone calls in which White could be heard planning the second robbery. The State proffered this evidence to rebut White's claim that he participated in the robbery of Harmon because he was afraid of McDonald. The State sought to show that White robbed drug dealers before he robbed Harmon (which White had stated in his testimony) and that he planned the robbery of another drug dealer afterwards, because that was what he did – rob drug dealers – not because he was under duress. The defense objected, and ultimately the State withdrew its efforts to introduce the calls. As the State correctly notes, if Gonzalez testified it would have elicited that evidence from her because she, too, was involved in planning the second robbery. She could also corroborate White's testimony that he had robbed drug dealers in the past.

While Gonzalez may have corroborated some aspects of White's version of events, she also had the very strong potential to undermine his duress defense. And,

---

[72] *See, e.g. Demby v. State*, 695 A.2d 1152, 1158 (Del. 1997) (stating that a witness was unavailable under D.R.E. Rule 804(a)(1) because he had invoked his Fifth Amendment privilege against self-incrimination).

because of her role in the Harmon home invasion and in other of White's criminal activities, her credibility was seriously compromised. Thus, White suffered no prejudice from trial counsel's decision not to attempt to present Gonzalez as a witness.

White's second claim is that his trial counsel provided constitutionally ineffective assistance of counsel because they failed to move for judgment of acquittal on the Murder First Degree (felony murder) charge, contending that the State did not prove the murder was committed "in furtherance of" the home invasion. In his third claim he also asserts his appellate counsel were ineffective for failing to raise the issue of appeal. White relies on superseded law; thus, his claims lack merit.

White argues that based on the Delaware Supreme Court's reasoning in *Williams v. State*,[73] the felony murder statute requires that a murder occurring during the course of a felony must also "occur to facilitate commission of the felony." He asserts that because (1) White was indicted for felony murder for causing the death of Harmon while "engaging in the commissioner of, or attempt to commit, or attempting to commit the felony of Home Invasion" and (2) the home invasion was completed prior to Harmon's death, that the reasoning in *Williams* would preclude conviction for felony murder in this case. But White fails to take into consideration that the Delaware General Assembly amended the felony murder statute after the *Williams* decision to remove the requirement that the murder be committed to facilitate the underlying felony.

Prior to 2004, Delaware's felony murder statute provided that when "[i]n the course of *and in furtherance of* the commission or attempted commission of a felony or immediate flight therefrom, the person recklessly causes the death of another person" that person is guilty of first degree murder.[74] In 2003, in *Williams*, "[the

---

[73] 818 A.2d 906 (Del. 2002).
[74] *Comer v. State*, 977 A.2d 334,338 (Del. 2009) (quoting 11 Del. C. § 636(a)(2)).

Delaware Supreme] Court held that the felony murder statute 'not only requires that the murder occur during the course of the felony but also that the murder occur to facilitate commission of the felony.'"[75] Thus, even under the reasoning in *Williams* as applied to the then existing felony murder statute, the facts here could certainly lead the trier of fact to conclude that Harmon was in fact killed to facilitate the felony of Home Invasion. As the evidence shows White and his co-conspirators were attempting to rob Harmon of drugs and actually tortured Harmon initially to get him to tell them where the drugs and or money was. Only when they accidently set off the fire alarm and faced the likelihood of being apprehended was Harmon shot, arguably to silence him and to give a warning to others. Thus, even under White's faulty argument the jury could still find him guilty of felony home invasion and of the old felony murder statute.

In direct response to *Williams*, the General Assembly amended the felony murder statute in 2004, 11 years before Harmon's murder to remove the language that the Supreme Court interpreted as requiring the murder to have been committed to facilitate the commission of the underlying felony.[76] At the time of Harmon's murder, the felony murder statute provided that a person is guilty of felony murder if "[w]hile engaged in the commissioner of, or attempt to commit, or flight after committing or attempting to commit any felony, the person recklessly causes the death of another person."[77] In *Comer v. State*, the Delaware Supreme Court explained:

> In the synopsis [to the bill amending the statute], the legislature cited our *Williams* decision with disapproval, stating that this Court's interpretation of Section 636(a)(2), as requiring evidence that a killing was "intended to help

---

[75] *Chao v. State*, 931 A.2d 1000, 1000(Del. 2007) (citing *Williams*, 818 A.2d at 913).
[76] *See Comer*, 977 A.2d at 338.
[77] 11 *Del. C.* § 636(a)(2).

the [underlying] felony progress," "is inconsistent with the common law rule, and with the definition of felony murder in almost every other state, which does not require evidence of specific intent in a felony murder prosecution." The synopsis went on to explain that the new statutory language, "while" engaged in felonious conduct meant "only that the killing must be directly associated with the predicate felony as one continuous occurrence"; rather than requiring that the killing affirmatively help facilitate the predicate felony.[78]

Therefore, at the time of Harmon's murder, the ruling in *Williams* no longer applied. And neither trial, nor appellate, counsel can be ineffective for failing to pursue a theory that had been rejected by a superseding statutory amendment.[79] Lastly, White claims his due process right to a fair trial was denied because of cumulative error. This claim lacks merit. "[A] claim of cumulative error, in order to succeed, must involve matters determined to be in error; not the cumulative effect of non-errors."[80] Because all of White's other claims fail, he cannot show cumulative error.

**CONCLUSION**

After reviewing the record in this case, it is clear that White has failed to avoid the procedural bars of Superior Court Criminal Rule 61(i). A review of his counsel's affidavit clearly shows that counsel represented White in a competent fashion and was not ineffective. I also find no need for an evidentiary hearing. Additionally, White has failed to demonstrate any concrete prejudice. Consequently, I recommend

---

[78] 977 A.2d at 340 (quoting 74 *Del. Laws*, c. 246, §§ 1, 2 (2004)).

[79] *See Glass v. Sec'y Pennsylvania Dep't of Corr.,* 726 F. App'x 930, 933 (3d Cir. 2018) ("[T]rial counsel cannot be deemed ineffective for failing to pursue meritless arguments.").

[80] *State v. Sykes,* 2014 WL 619503, at *38 (Del. Super. Jan. 21, 2014)), *aff'd* 147 A.3d 201 (Del. 2015).

that White's motion be denied as procedurally barred by Rule 61(i)(3) for failure to prove cause and prejudice and as meritless.

/s/ Andrea M. Freud
Commissioner

AMF/jan
oc:   Prothonotary
cc:   Hon. Jeffrey J. Clark
       Kathryn Garrison, Esquire
       Christopher S. Koyste, Esquire
       Edward C. Gill, Esq
       Alexander Funk, Esq